IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


```
* * * * * * * * * * * * *   CRIMINAL ACTION
UNITED STATES OF AMERICA  *   11-082S
                          *
VS.                       *   SEPTEMBER 11, 2014
                          *
DONALD J. JONES, III      *
* * * * * * * * * * * * *   PROVIDENCE, RI
```

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(Resentencing)


**APPEARANCES**:

FOR THE GOVERNMENT:          STEPHEN G. DAMBRUCH, AUSA
                             U.S. Attorney's Office
                             50 Kennedy Plaza
                             Providence, RI  02903

FOR THE DEFENDANT:           CHARLES A. TAMULEVIZ, ESQ.
                             Darrow Everett, LLP
                             One Turks Head Place
                             Suite 1200
                             Providence, RI  02903


Court Reporter:              Anne M. Clayton, RPR
                             One Exchange Terrace
                             Providence, RI  02903


Proceeding reported and produced by computer-aided
stenography

1    11 SEPTEMBER 2014 -- 2:30 P.M.

2             THE COURT:  Good afternoon.  This is the matter

3    of the United States versus Donald Jones.  We're here

4    for a resentencing this afternoon.

5             Let's begin by having counsel identify

6    themselves for the record, please.

7             MR. DAMBRUCH:  Your Honor, Stephen Dambruch,

8    First Assistant United States Attorney, for the

9    Government.

10            MR. TAMULEVIZ:  Good afternoon, your Honor.

11   Charles Tamuleviz on behalf of Mr. Jones.

12            THE COURT:  All right.  Thank you.

13            As everyone here knows, this matter was heard by

14   the First Circuit Court of Appeals.  They issued their

15   opinion on April 30th, 2014, upholding the Defendant's

16   conviction but noting that an error had been made in

17   the imposition of sentence and remanding the case for

18   resentencing consistent with the Court's opinion.

19            So I've subsequently received a revised

20   Presentence Investigation Report from the Office of

21   Probation, which is dated June 16th, 2014.  And

22   Mr. Tamuleviz, if you could just confirm that you've

23   received that and that you've reviewed it with your

24   client.

25            MR. TAMULEVIZ:  I did receive it, your Honor,

1     and I have reviewed it with Mr. Jones.

2            THE COURT:  Okay.  Thank you.

3            Now, I understand you had a couple of objections

4     to the presentence report; is that right?

5            MR. TAMULEVIZ:  Yes.  Mr. Jones wishes to assert

6     the objections set forth in the pleading I filed

7     yesterday.

8            THE COURT:  Okay.  Do you want to be heard any

9     further on those?

10           MR. TAMULEVIZ:  Your Honor, I think I probably

11    should make a brief argument on that.

12           THE COURT:  Go ahead.

13           MR. TAMULEVIZ:  Thank you.

14           It appears one of the objections -- I'm not

15    going to do it in order, Judge, but one of the

16    objections relates to the imposition of restitution in

17    this case; but as I read the Government's response,

18    they have not received any victim impact statements

19    that would allow the Court to impose restitution in

20    this -- at this resentencing so I think that one sort

21    of speaks for itself.

22           With regard to the objection to the inclusion of

23    links that was used in computing the total number of

24    images for the guidelines computation, again, as I read

25    the Government's response, they have accounted for or

1    taken out the number of links and the math still brings

2    you to in excess of 5,000 images but, nevertheless,

3    significantly less than the almost 8,000 that we

4    started with.

5          Mr. Jones does wish to assert his objection to

6    the enhancements that are set forth in paragraphs 26,

7    33 and 41, all of which are premised upon the age of

8    the purported victim; and as the Court recalls in this

9    case, the purported victim was a fictitious individual.

10   There was no real victim.  And Mr. Jones objects to the

11   inclusion of those enhancements on that basis.

12         He also wishes to assert an argument that there

13   was sentencing guideline manipulation inasmuch as those

14   three enhancements I just mentioned were premised upon

15   the age of the purported victim and that age was

16   selected by the undercover agent during the course of

17   the investigation.

18         And I believe, your Honor, that I've just

19   covered the objections that have been asserted.

20         And as the Court, I believe, is aware from what

21   I filed yesterday, Mr. Jones does reassert the

22   objections that he put forth at the initial sentencing

23   in this case other than the objections that related to

24   the imposition of a life sentence, which is now not

25   relevant.

1        THE COURT:  But those were all heard by the

2   Court of Appeals, right?

3        MR. TAMULEVIZ:  I'm not sure if all of them were

4   raised to the Court of Appeals.

5        THE COURT:  If they weren't raised before the

6   Court of Appeals, then they're waived, aren't they?

7        MR. TAMULEVIZ:  Well, your Honor, I think

8   inasmuch as this is a resentencing, they need to be --

9   if they're going to be raised they need to be re-raised

10  again here.  I don't think he's waived them in any way

11  procedurally.

12        THE COURT:  What are they then?  Let's get all

13  of your objections out on the table so that I can rule

14  on them.  I don't want to be in a position where you're

15  just saying that all previously raised objections are

16  made and then I don't make a ruling on them.

17        MR. TAMULEVIZ:  I appreciate that, your Honor.

18        The first objection that was raised at the

19  initial sentencing in Mr. Jones' initial sentencing

20  memorandum was essentially that because he never

21  directly communicated over the Internet with the victim

22  that the adjustments or enhancements that he received

23  regarding the use of the Internet, and I believe those

24  are in paragraphs 16, 23 and 32 -- I'm sorry.  I'm

25  referring to the numbers in the initial presentence

1    report, Judge.

2              THE COURT:  Well, those aren't the --

3              MR. TAMULEVIZ:  There's paragraph 25 in the

4    revised presentence report.

5              THE COURT:  I believe you may be looking at

6    paragraphs 18, 25 and --

7              MR. TAMULEVIZ:  33?

8              THE COURT:  -- 33.

9              MR. TAMULEVIZ:  33.

10             THE COURT:  Okay.

11             MR. TAMULEVIZ:  Actually, it would be 34 on the

12   last one, Judge.  34 is the one that references the use

13   of the Internet.

14             THE COURT:  You're right.  34.

15             MR. TAMULEVIZ:  So as to those three

16   enhancements, Mr. Jones asserts an objection inasmuch

17   as he never directly communicated with the purported

18   victim through the use of the Internet.

19             THE COURT:  All right.

20             MR. TAMULEVIZ:  The remainder of his objections

21   at the initial sentencing dealt with the imposition of

22   the life sentence, Judge.

23             THE COURT:  You mean the mandatory life?

24             MR. TAMULEVIZ:  Yes.

25             THE COURT:  All right.  So that is what was

1    resolved by the Court of Appeals, so those issues are

2    off the table.

3         MR. TAMULEVIZ:  Those are, yes.

4         THE COURT:  All right.  Thank you.

5         I'll hear from Mr. Dambruch.

6         MR. DAMBRUCH:  Your Honor, as to the objections

7    newly raised yesterday by defense counsel, I did file a

8    written response and I would rest upon that response to

9    those objections.

10        As to the objection renewed today with regard to

11   the enhancement relating to the Defendant's

12   communication or use of the Internet, as I had argued

13   at the initial sentencing and I would reassert here

14   today, the guidelines make it clear that that

15   particular provision applies not only to communication

16   directly with the minor victim but also to a

17   communication with a person who exercises custody, care

18   or supervisory control over the minor, and that is set

19   forth in Section 2A3.1 Comment Note 4(B), which makes

20   it clear that communication with a person who at least

21   purportedly exercises custody, care or supervisory

22   control is sufficient.  There need not be direct

23   communication with the minor victim.

24        Also, your Honor, as I've reviewed in my

25   objection filed yesterday, in my response filed

1   yesterday, I had previously covered in my objection to

2   the Defendant's initial filings back at the time of the

3   original sentencing, the guidelines also make it clear

4   that when they use the term "minor" they are including

5   both real and fictitious individuals in that particular

6   definition.

7         So for those reasons, your Honor, I would ask

8   the Court to overrule each and every one of the

9   Defendant's objections posed today.

10        THE COURT:  Okay.  Thank you, Mr. Dambruch.

11        All right.  Let me deal with these objections.

12  I'll start with objections previously raised.  I don't

13  know if any of these objections are waived or not by

14  virtue of the appeal, but I'm going to deal with them

15  as if they're properly before me.

16        The previously raised objection dealing with the

17  use of the Internet to entice or to coerce a minor to

18  engage in prohibited sexual conduct, Mr. Dambruch is

19  correct in citing the guidelines Section 2A3.1 in

20  Comment 4(B), which states as follows:  Subsection

21  (b)(6)(B), which is the relevant subsection, is

22  intended to apply only to the use of a computer or an

23  interactive computer service to communicate directly

24  with a minor or with a person who exercises custody,

25  care or supervisory control of the minor.

1          This would appear to fall directly into the

2     language of Comment 4(B).  So that objection is

3     overruled.  And that objection pertains to the

4     enhancements at paragraphs 18, 25 and 34 of the revised

5     presentence report.

6          Now, with respect to the new objections filed

7     yesterday by the Defendant, I'll go through them one at

8     a time.

9          The first objection relates to paragraph number

10    44 of the presentence report, which provides for a

11    five-level upward adjustment because the subject

12    offense involved more than 600 images of child

13    pornography.  As the Government sets forth in its

14    objection, and this is really irrespective, I think, of

15    whether the links were used or not, the evidence

16    indicated that the Defendant possessed or transmitted a

17    total of 76 videos and 112 images.  There are also

18    links to 28 additional videos.  All of that would

19    amount to 5700 images.  Even without the links, the

20    total number of images would be, according to the

21    Government's memo, 5,812 images.

22          Now, do you disagree with that calculation,

23    Mr. Tamuleviz?

24          MR. TAMULEVIZ:  I do not disagree with the math,

25    your Honor.

1    THE COURT:  All right.  So if the calculation is

2    correct and there doesn't appear to be any dispute

3    about it, that would greatly exceed the number of

4    images necessary to trigger the five-point adjustment.

5    So that objection is denied.

6    Then there is the objection with respect to

7    paragraph numbers 26, 33 and 41.  This is the

8    Defendant's argument that the victim, the minor victim

9    in the case was not an actual person but was

10    fictitious, and that the choice of the victim's age

11    having been made by the Government agent amounts to

12    sentencing manipulation.  Each of these objections is

13    denied.  The Government correctly points out in its

14    objection that whether or not the minor was a real

15    person is irrelevant for purposes of determining

16    whether the guideline enhancements in those paragraphs

17    apply.  The guideline Sections 2G1.3 Comment Note 1 and

18    then 2A3.1 all indicate that the victim may be real or

19    fictitious.  And the claim that the choice of the age

20    by the agent is sentencing manipulation is also

21    inappropriate.  The Government points out the case of

22    the **United States versus Barbour**:  To establish a

23    manipulation claim, the defendant must show the agents

24    overpowered the free will of the defendant and caused

25    him to commit a more serious offense than he was

1    predisposed to commit.

2         The evidence in this case was overwhelming with

3    respect to the Defendant's desire to commit this crime.

4    He was given multiple opportunities to withdraw from

5    the crime and chose to continue forward.  So there's no

6    evidence that the Defendant's free will was overpowered

7    in this case.  So the sentencing manipulation objection

8    is denied.

9         I believe that covers all of the Defendant's

10   objections, doesn't it?

11        MR. TAMULEVIZ:  Your Honor, except as to the

12   restitution issue.

13        THE COURT:  Oh, okay.

14        Well, is the Government pursuing a restitution

15   order?

16        MR. DAMBRUCH:  Your Honor, I checked both with

17   our victim witness person, Gail James, and also with

18   Ms. Mattias from Probation.  It's my understanding that

19   no victim has submitted a request for restitution at

20   this point in time.

21        THE COURT:  All right.  Well, given that, I

22   don't think I'll be ordering a restitution amount.

23        MR. TAMULEVIZ:  Very well.

24        THE COURT:  All right.  So all the objections

25   have been dealt with so I'll now set forth on the

1   record the advisory guideline range as set forth in the

2   new presentence report.

3        So we begin with Count I, the base offense

4   level, this is the criminal sexual abuse, attempt to

5   commit criminal sexual abuse under 2A3.1.  The base

6   offense level in this case is 38.  There's a two-point

7   upward adjustment because the Defendant used the

8   computer to attempt to entice, coerce a minor to engage

9   in the prohibited conduct.  That yields an adjusted

10  offense level of 40.

11       On Count II, promoting a commercial sex act or

12  prohibited sexual conduct with a minor, transportation,

13  et cetera, in this case travel to engage in commercial

14  sex act or prohibited sexual conduct with a minor,

15  according to Subsection A3, the base offense level is

16  28 because the Defendant was convicted under 18 U.S.C.

17  Section 2422(b).  There's a two-point upward adjustment

18  because the Defendant used a computer in the commission

19  of this crime.  There's an eight-point upward

20  adjustment because the offense involved a minor who had

21  not yet attained the age of 12.  That places the

22  Defendant in -- gives the Defendant an adjusted offense

23  level of 38.

24       Count III, the base offense level is a level 30.

25  This is Title 18, U.S.C. 2423(b) and (f).  There's a

1    four-point upward adjustment because the victim had not

2    yet attained the age of 12 years old.  There is a

3    two-point upward adjustment because the Defendant used

4    the computer, and that yields an adjusted offense level

5    of 36.

6          Group 2 -- those first three counts are Group 1

7    under the grouping rules.  Group 2 comprised of Counts

8    IV and V.  Counts IV and V are -- Count IV is the

9    transportation of child pornography.  Count V is the

10   possession of child pornography.

11         Base offense level on Counts IV and V when

12   they're grouped together under Section 3D1.2(d) is a

13   level 22; a two-point upward adjustment because the

14   child pornography involved material or involved

15   prepubescent minors under the age of 12 years old.

16         There's a five-point upward adjustment because

17   Defendant engaged in a pattern of activity involving

18   sexual abuse or exploitation of a minor.  There's a

19   two-point upward adjustment because the offense

20   involved the use of a computer.  There's a five-point

21   upward adjustment because the offense involved more

22   than 600 images.  And that results in an adjusted

23   offense level on Counts IV and V, Group 2, of 36.

24         Finally Count VI, which is an aggravated felony

25   by a person required to register as a sex offender, the

1    guidelines provide Section 2A3.6 according to

2    Subsection (b), if the Defendant was convicted under 18

3    U.S.C. Section 2260A, then the guideline sentence is

4    the term of imprisonment required by the statute.  The

5    statute in this case requires a term of imprisonment of

6    ten years and that sentence is required to be imposed

7    consecutive to any sentence imposed for an offense

8    enumerated under that section.

9         So the net of all this is set forth in

10   paragraphs 51 and 52.  51 sets forth the combined

11   offense level and describes the rules with respect to

12   that.  Counts I, II and III fall under this rule and

13   yield a combined offense level of 41.

14        Paragraph 52 relates to the Defendant as a

15   repeat and dangerous sex offender against minors and

16   states as follows:  According to Section 4B1.5, in any

17   case in which the defendant's offense of conviction is

18   a covered sex crime, Section 4B1.1, career offender

19   does not apply and the defendant committed the instant

20   offense of conviction subsequent to obtaining at least

21   one sex offense condition, the offense level should be

22   the greater of the offense level determined under

23   Chapters 2 and 3 are the offense level determined by

24   the table at this section.

25        The Defendant's offense level determined under

1    Chapters 2 and 3 yielded a higher offense level, and so

2    the offense level is level 41.

3        There's obviously no adjustment for acceptance

4    of responsibility because this matter went to trial so

5    the total offense level is 41.

6        The Defendant's criminal history is summarized

7    in paragraph 61 of the presentence report.  He has 9

8    criminal history points.  Two points are added because

9    he committed this offense while under a criminal

10   justice sentence.  That gives him 9 criminal history

11   points and establishes a criminal history category

12   of 4.

13       Section 4B1.5(a)(2) states the criminal history

14   category shall be 5 if that is greater than determined

15   under Chapter 4.

16       So this very complicated guideline calculation

17   results in a total offense level of 41 and a criminal

18   history offense category of 5.  And as such, the

19   Defendant's advisory guideline range is 360 months to

20   life in prison plus 10 years consecutive on Count VI.

21       All right.  I'll hear first from the Government

22   with respect to the appropriate sentence.

23       MR. DAMBRUCH:  Thank you, your Honor.

24       THE COURT:  I suppose before you start I should

25   note that in addition to the 10-year mandatory sentence

1    on Count VI, as I understand it, there is a mandatory

2    minimum term on Count I of no less than 30 years and a

3    minimum on Count II of not less than 10 years.

4         MR. DAMBRUCH:  Yes, your Honor.  I believe also

5    on Counts IV and V there are minimum sentences as well

6    of 15 and 10 years as I read the presentence report.

7         THE COURT:  I think that's right.

8         MR. DAMBRUCH:  And Judge, just for

9    clarification, it's my understanding that Count VI was

10   not sent back for resentencing.

11        THE COURT:  Well, I suppose that's right.  It

12   does say that.  So I think it's six of one, half dozen

13   of the other.  The previously imposed sentence of ten

14   years on Count VI still stands.

15        MR. DAMBRUCH:  Yes, your Honor.

16        THE COURT:  So whatever sentence I impose, that

17   ten-year sentence is consecutive to the sentence I

18   impose today.

19        MR. DAMBRUCH:  Understood, your Honor.

20        THE COURT:  Okay.

21        MR. DAMBRUCH:  Your Honor, I reviewed the

22   sentencing transcript from the last time we were here,

23   and obviously because of the understanding that the

24   life sentence was mandatory, there was little or no

25   argument with regard to what an appropriate sentence

1    for this Defendant would be.

2         As I looked over the materials, certainly I

3    can't say that a life sentence is inappropriate, but

4    considering the travel of this case, I don't today feel

5    comfortable re-recommending a life sentence. However,

6    I do believe that a significant sentence is warranted

7    not only because the guideline range is 360 months to

8    life, but because of the nature of the conduct involved

9    and the character and history of the person before the

10   Court.

11        Coming back into this courtroom once again in

12   the presence of Mr. Jones, it's hard to get out of my

13   head the revulsion and disgust that I felt as we sat

14   here day after day and listened to an individual

15   describe in excruciating and disgusting detail the

16   plans he had for a nine-year-old little girl. But

17   getting beyond just the disgust and revulsion that

18   those conversations brought to mind, I guess the other

19   and probably more longstanding reaction to those

20   conversations and all of the other evidence is

21   chilling. It's chilling to know that in this

22   particular case before you now, your Honor, we have a

23   true child predator, a committed predator, who

24   throughout his adult life, certainly since his initial

25   conviction of aggravated sexual assault in 1993, has

1  made it his mission to prey upon young children; a

2  person who the system has tried to deter from that

3  conduct by sentencing him to ten years of

4  incarceration, then releasing him on parole which he

5  violated twice, sending him back to prison again for

6  various other child sex-related offenses, whether it's

7  possession of child pornography.  He violated probation

8  in 2006 again.  And then here, fortunately, was

9  detected by the Postal Inspection Service and Homeland

10  Security investigations before he was able to victimize

11  yet another child.

12       As difficult as it is to acknowledge because our

13  system is really built upon multiple prongs,

14  punishment, deterrence and rehabilitation, with regard

15  to this particular Defendant, Judge, I think

16  rehabilitation is out the window.  This Defendant is

17  simply beyond rehabilitation.  I say that based upon

18  the evidence in this case and the Defendant's criminal

19  history.

20       With regard to punishment, he should be

21  punished.  He engaged in abhorrent behavior that

22  deserves the most serious punishment.  But it's the

23  last prong of the sentencing consideration that I'd

24  like to focus on, and that's deterrence.  Because in

25  this particular case there's general deterrence and,

1    obviously, a long sentence will hopefully deter others

2    from engaging in similar conduct, but it's more the

3    specific deterrence of Mr. Jones that forms the basis

4    of my recommendation, and I would urge the Court to

5    inform the basis of the Court accepting that

6    recommendation in imposing the sentence that's

7    recommended by the Government.

8           And that simply is that, Judge, the only way to

9    prevent Mr. Jones from victimizing another child is to

10   lock him up and keep him in prison where he can't have

11   access to another child because this Defendant's

12   history shows that whenever he walks out of those

13   prison doors, whenever a child is available to him

14   whether it's working through a church group or he's in

15   a home with children or he's on the Internet attempting

16   to convince a parent to allow him access to their young

17   child, no child is actually safe from this Defendant.

18          Based upon all that, your Honor, I'm

19   recommending a sentence as to Count I of 45 years

20   incarceration.  As to Count II, 45 years incarceration.

21   As to Count III, 30 years incarceration, which is the

22   maximum statutory penalty.  As to Count IV, 40 years

23   incarceration, which again is the maximum statutory

24   penalty; and as to Count V, 20 years incarceration,

25   which is the maximum statutory penalty and obviously

1    the sentence previously imposed in Count VI, the

2    ten-year sentence run consecutive.

3         Your Honor, I would argue to the Court that

4    sentence is within the guideline range; and secondly,

5    it's warranted based upon the facts of this case and

6    the Defendant's criminal history.  Thank you.

7         THE COURT:  Your argument would be that those

8    sentences on Counts I through V should be imposed

9    concurrently.

10        MR. DAMBRUCH:  That's correct, your Honor.  I

11   apologize for not clarifying that.

12        THE COURT:  That's fine.

13        Now, just a question with respect to supervised

14   release.  Obviously, if I adopt your recommendation or

15   something close to it, this may be a moot point given

16   the Defendant's age, but do you believe it would be

17   necessary for me to impose all the usual conditions

18   that I impose on sex offenders during a term of

19   supervised release?

20        MR. DAMBRUCH:  I do, your Honor.  And I say that

21   only because we can't predict the future and we don't

22   know if some time down the line parole may be

23   reinstituted or the Defendant may be granted early

24   release because of a medical condition by a warden.  So

25   there's a lot of things that could happen.  I'm not

1    saying they will happen, but because we can't predict

2    that I would urge the Court to impose actually a term

3    of life supervised release with the appropriate

4    conditions attached thereto.

5         THE COURT:  Thank you.

6         Mr. Tamuleviz.

7         MR. TAMULEVIZ:  Your Honor, given where the

8    statutory framework puts us, by my calculation the

9    minimum amount of time that the Court can sentence

10   Mr. Jones to would be -- would work out to a total of

11   40 years, the 30-year mandatory minimum on Count I,

12   with Counts II through V being ordered to run

13   consecutive to that, and then Count VI with the

14   mandatory ten-year consecutive.  So at a minimum, what

15   we're talking about is 40 years.  And I think when you

16   consider the factors that even Mr. Dambruch discussed

17   earlier, given Mr. Jones' age, he's 50 years old now,

18   in 40 years he's going to be 90, that anything beyond

19   that, beyond that minimum really comes down to

20   overkill.  He would be 90 years old when he gets out if

21   you give him the minimum penalties that you can impose

22   here.

23        And Mr. Jones is suggesting just that, that you

24   impose the sentence on Count I of 30 years and then on

25   the Counts II through V, whatever you choose, anything

1    up to 30 years but -- and that's permissible by

2    statute, but run them all concurrently as the

3    Government recommended, and Count VI is ten years

4    mandatory consecutive on top of the 30 for Count I.

5    That's 40 years.

6            And in this case, your Honor, I would ask you to

7    consider that there was no real victim here, no live

8    victim.  There was no touching by the Defendant.  And

9    you heard his explanation during the trial from his

10   interview that was recorded.  Forty years for that is

11   more than sufficient to accomplish the goals set forth

12   in Section 3553, Judge.  He'll be 90 years old when

13   he's done with it.

14           So for those reasons, Judge, that's our

15   recommendation.

16           Mr. Jones did want me to state specifically on

17   the record that by making that recommendation he is in

18   no way waiving any rights he may have to appeal any

19   sentencing issues related to the case.

20           THE COURT:  Thank you, Mr. Tamuleviz.

21           Mr. Jones, do you wish to say anything before I

22   impose sentence?

23           THE DEFENDANT:  Your Honor, I know that this is

24   a bad case.  And I know -- I know I did some things

25   that were wrong.  Okay?

1           I do want to put for the record, okay, that

2     through all my conversations that I had with the agent

3     I never made plans to do anything.  He made plans and I

4     agreed with him.  Okay?  All the stories that I told

5     him were made up, which there was nobody could find any

6     victims anywhere because I made them up.

7           He's talking about a church group.  I've never

8     touched anybody.  I had one incident where I touched

9     somebody in 1991.  I have never even thought about it.

10    I didn't lie about it then.  I went to trial and told

11    the truth.  I touched somebody.  They offered me a

12    three-year plea bargain.  I could have took it, but I

13    wanted to tell the truth.  I did touch somebody.  It

14    wasn't in a sexual context.  When I did it, I did it.

15    I knew it was wrong and I knew that it was an accident,

16    but people don't understand accidents.  So I went in

17    the Army, and I left.  I was gone.  I got arrested

18    while I was in the Army.

19          I never tried to run from anything I did.  Okay?

20    Never tried to give excuses for anything I've done.

21    Whatever I've done, I've done it.  All I can say is

22    that even from the beginning of this I never intended

23    to harm or touch anyone.  My explanation on the

24    original audio from the police station I thought was

25    clear enough on that, but I guess not.  Whatever the

1    Court gives, I have to accept it.

2              THE COURT:  Okay.  Thank you, Mr. Jones.  You

3    can remain standing.

4              You have obviously convinced yourself of your

5    innocence and of your righteousness here, but the

6    simple fact is I don't believe it.  And I think the

7    evidence in the case overwhelmingly proves that what

8    you're saying to me here today is not true.

9              You can talk yourself into anything that you

10   want to, but the evidence was just overwhelming.  It

11   was clear to me what you were coming to Rhode Island to

12   do and what you hoped to do, and the agent gave you the

13   opportunity to do it and you took that opportunity.

14             I don't know whether what you talked about in

15   those phone conversations about what you had done

16   previously was true or not.  You say now that none of

17   it was true; you were making it up.  I just don't

18   believe you, and I think Mr. Dambruch has correctly

19   summed it up.  I think you're a child predator.  I

20   think if you're given the opportunity to be free, you

21   will pursue children the way you have in the past, and

22   I don't think there's really any solution to the

23   problem that you present other than a very long prison

24   sentence.  And as we know, that's required by the

25   statute.

1           So I think all of the sentencing factors in this

2     case argue in favor of or require a very substantial

3     prison sentence.  Now, the question really is do I

4     sentence you to life in prison or not.  I thought about

5     this and I tend to agree with what Mr. Dambruch

6     suggests and really in a way what Mr. Tamuleviz is

7     suggesting, that a sentence of life imprisonment, which

8     of course in the federal system means life in prison,

9     is not called for.  Whether that's any different as a

10    practical matter than what I'm going to impose or what

11    the statute requires, it may not be, but I think these

12    differences in terms of a sentence of a specific number

13    of years versus a sentence of life, they are important.

14          So I'm not going to impose life imprisonment.

15    I'm going to give you a term of incarceration and the

16    term that I'm going to give you is 40 years.  That will

17    be in addition to the ten years on Count VI that is not

18    before me in this sentencing hearing.

19          I think a term of 40 years with a total term of

20    50 years is the appropriate term that's called for by

21    the nature of the crimes that you were convicted of.

22    It takes into consideration your nature and

23    circumstances as a defendant.  It provides for, very

24    importantly, protection of the public.  Probably more

25    important than any other factor under Section 3553 is

1     protection of the public and deterrence of you as an

2     individual offender from committing a crime like this

3     or preying on children in the future.  It also serves

4     the goal, sentencing goal of general deterrence.  And

5     it is sufficient but not greater than necessary to

6     achieve all of those goals.

7           So that's the sentence that I am going to

8     impose.  I'm further going to impose a variety of

9     conditions on your term of supervised release, which

10    will be life.

11          As we have previously discussed, there's not

12    going to be any restitution in this case, nor any fine.

13          So in the matter of the United States versus

14    Donald Jones, III, the Defendant is hereby sentenced to

15    a term of incarceration of 40 years on Counts I and II,

16    30 years on Count III, 40 years on Count IV, 20 years

17    on Count V, all concurrent with each other.

18          This, of course, is in addition to the ten years

19    previously imposed on Count VI for a total term of

20    incarceration in both of 50 years.

21          Further, the Defendant, following his term of

22    incarceration, shall serve a term of supervised release

23    of life.  There will be no restitution and there is no

24    fine in this case.  There is a special assessment of

25    $600.

1          Now, in addition to the standard conditions of

2     supervised release, the following special conditions

3     will be imposed:  The Defendant shall comply with all

4     applicable federal and state laws regarding the

5     registration of sex offenders in his state of

6     residence, employment and school attendance and shall

7     provide for verification of compliance with this

8     requirement to the probation officer.

9          Number two, the Defendant shall participate in a

10     sex offender-specific treatment program as directed by

11     the probation officer and shall contribute to the cost

12     of that treatment based on his ability to pay as

13     determined by the Probation Office.

14          Third, the Defendant shall participate in

15     testing in the form of polygraphs or other methodology

16     that are approved by the Court to ensure compliance of

17     the conditions of his treatment and supervised release

18     and shall contribute to the cost of that testing based

19     on his ability to pay.

20          Fourth, the Defendant shall permit a probation

21     officer who may be accompanied by either local, state

22     or federal law enforcement authorities upon reasonable

23     suspicion of a violation of his conditions of

24     supervision to conduct a search of the Defendant's

25     residence, automobile, workplace and computer and/or

1    other electronic communication or data storage devices

2    or media.

3         Fifth, the Defendant must submit to unannounced

4    examination of his computer or other electronic

5    equipment by the probation officer who may be

6    accompanied by either local, state or federal law

7    enforcement authorities, which may include retrieval

8    and copying of all data from the computer to ensure

9    compliance with the condition.

10        In addition, the Defendant must consent to the

11   removal of such equipment for the purpose of conducting

12   a more thorough investigation and must allow at the

13   discretion of the probation officer the installation on

14   the Defendant's computer of any hardware or software

15   system necessary to monitor his or her computer use.

16        Number six, the Defendant shall have no contact

17   with any child under the age of 18 without the presence

18   of an adult who is aware of the Defendant's criminal

19   history and who is approved in advance by the probation

20   officer.

21        Seventh, the Defendant shall not loiter in areas

22   where children congregate.  These areas include but are

23   not limited to schools, daycare centers, playgrounds,

24   arcades, amusement parks, recreation parks and youth

25   sporting events.

1        Number eight, the Defendant shall not be

2    employed in any occupation, business or profession or

3    participate in any volunteer activity where there is

4    access to children under the age of 18 unless he is

5    authorized in advance by the probation officer.

6        Number nine, the Defendant shall live at a

7    residence approved by the Probation Office and not

8    reside with anyone under the age of 18 unless approved

9    in advance by the Probation Office.

10        Number ten, the Defendant shall not use,

11    possess, procure or otherwise obtain any electronic

12    device that can be linked to any computer networks,

13    bulletin boards, Internet service providers or exchange

14    formats involving computers.

15        And finally, the Defendant shall not maintain a

16    post office box unless approved by the probation

17    officer, and he shall report all mailing addresses used

18    by him and immediately report any changes.  In

19    addition, the Defendant shall not receive any

20    prohibited items by mail at any of these locations.

21        All right.  I think I've previously stated

22    there's no restitution and no fine.  There's a special

23    assessment.

24        I do need to advise you, Mr. Jones, that you

25    have the right to appeal the sentence I've just imposed

1    on you.  If you wish to appeal, you need to be aware

2    that you have to file your appeal within 14 days of the

3    entry of the judgment.  Mr. Tamuleviz can assist you

4    with that if you wish.

5         Is there anything further?

6         MR. DAMBRUCH:  Not that the Government is aware

7    of.

8         THE COURT:  Is there anything further,

9    Mr. Tamuleviz?

10         MR. TAMULEVIZ:  No, sir.

11         THE COURT:  Then we'll be in recess.

12         (Court concluded at 3:20 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T I O N</u>

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.


/s/ Anne M. Clayton

_____
Anne M. Clayton, RPR




December 15, 2014

_____
Date